IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SIONE FINEFEUIAKI,<br>#A1065183, | ) CIV. NO. 18-00453 HG-RT<br>)<br>) |
| Plaintiff, | ) ORDER DISMISSING COMPLAINT<br>) WITH LEAVE TO AMEND |
| vs. | )<br>) |
| MAUI CMTY. CORR. CTR.<br>STAFF AND AFFILIATES, et<br>al., | )<br>)<br>) |
| Defendants. | )<br>) |

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

Before the Court is pro se Plaintiff Sione

Finefeuiaki's prisoner civil rights Complaint brought

pursuant to 42 U.S.C. § 1983. ECF No. 1. Finefeuiaki

is a pretrial detainee confined at the Maui Community

Correctional Center (MCCC).[1] He alleges that Defendants

---

[1] Finefeuiaki was awaiting trial in *State v. Finefeuiaki*,
Cr. Nos. 2CPC-18-00090 and 2CPC-18-000547 (Haw. 2d Cir. 2018),
when he brought this action. http://www.courts.state.hi.us/
(visited 02/05/2019). *See Bias v. Moynihan*, 508 F.3d 1212, 1225
(9th Cir. 2007) (stating a court "'may take notice of proceedings
in other courts" if they are directly related to matters at
issue). He also has two pending federal actions in this court:
*Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff and Affiliates*, 1:18-
cv-00249 DKW-KJM and *Finefeuiaki v. Maui Police Dep't*, 1:18-cv-
00325 JAO-RT.

MCCC Warden James Hirano, Captain Mulleitner, Chief of Security (COS) Deborah Taylor, and Adult Corrections Officer (ACO) Sgt. Shores violated his civil rights by transferring or approving his transfer to MCCC safe watch Cell #2. Finefeuiaki seeks damages and either dismissal of his state criminal charges or release pending trial for those charges.

For the following reasons, the Court DISMISSES the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a-b), for failure to state a colorable claim for relief, with leave granted to amend as limited below.

## I.  SCREENING

Because Finefeuiaki is a prisoner proceeding in forma pauperis (IFP), the court must screen his pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and dismiss any claims that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing § 1915(e)(2)); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)
(discussing § 1915A(b)).

Section 1915 screening involves the same standard
of review as that under Federal Rule of Civil Procedure
12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112
(9th Cir. 2012) (discussing screening under
§ 1915(e)(2)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121
(9th Cir. 2012) (discussing screening under
§ 1915A(b)). That is, a complaint must "contain
sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal
quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.
"Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6), in turn, is read in conjunction with
Rule 8(a). *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99
(9th Cir. 2013). Under Rule 8, a complaint must
contain a "short and plain statement of the claim
showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a complaint must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which [that claim] rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Iqbal*, 556 U.S. at 555 (stating Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The "mere possibility of misconduct" falls short of meeting this standard. *Iqbal*, 556 U.S. at 555; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Leave to amend must be given if the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130.

//

//

//

## II.  BACKGROUND[2]

## A.  Present Action

Finefeuiaki says that on or about March 22, 2018, he received notice that he had been found guilty for a misconduct violation and sanctioned to thirty days disciplinary segregation.  This sanction was to begin March 28 and end April 27, 2018.  Compl., ECF No. 1, PageID #12.

On April 5, 2018, however, Finefeuiaki was apparently scheduled to move to Module Delta.  "Sam Fong" notified Sgt. Shores that Finefeuiaki was afraid to move to Module Delta, where the inmates who had earlier assaulted him were housed.  Finefeuiaki wanted to remain in protective, segregated housing.  *Id.*, PageID #13.  Sgt. Shores denied Finefeuiaki's request to move to Cell #1, but moved him to Cell #2, where two "close custody . . . infamous, misbehave" inmates were housed.  Compl., ECF No. 1, PageID #13.  Finefeuiaki

---

[2] Finefeuiaki's facts are accepted as true and construed in the light most favorable to him.  *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

remained in Cell #2 with these inmates for five days, from April 5 to 9, 2018.

Finefeuiaki alleges that the temperature in Cell #2 was extremely cold, the sink was broken, their bedding and Finefeuiaki's back brace were confiscated between 8:00 a.m. and 8:00 p.m.,[3] they were given no cleaning supplies to clean the cell, and he was required to wear ankle and wrist restraints for his daily hour exercise outside of the cell.

Finefeuiaki says that Captain Mulleitner and COS Taylor approved his transfer to Cell #2, and Warden Hirano failed to ensure his and other MCCC inmates safety, or respond to his messages.

Finefeuiaki alleges that Defendants' actions or inactions constituted cruel and unusual punishment and denied him due process and equal protection of the law. He seeks dismissal of his pending state criminal proceedings, and in exchange, says that he will dismiss this suit "A.S.A.P." Compl., ECF No. 1, PageID #15.

---

[3] Finefeuiaki states that he needed the back brace because he had a fractured spine.

In the alternative, Finefeuiaki seeks compensatory
damages and supervised release on bond.

**B.   No. 1:18-cv-00249 DKW-KJM**

Finefeauiaki raised these claims in No. 1:18-cv-
00249, although he provided significantly more detail
regarding his transfer to Cell #2 in that case.[4]  For
example, Finefeuiaki explained that he was assaulted by
three inmates at MCCC on March 29 and 30, 2018,[5]
requiring hospital care on both occasions.  *Id.,*
Compl., ECF No. 1, PageID #6-7.  Finefeuiaki did not
mention that he was already in disciplinary segregation
for a misconduct violation.  When he returned to MCCC
after the second assault, Finefeuiaki was moved
upstairs to a "safe watch" cell to be separated from
these inmates and their cohorts.  *Id.,* PageID #9.  He
alleged that Sgt. Shores took him downstairs to be
rehoused on April 5, 2018, but when Finefeuiaki told
Shores that he felt unsafe downstairs and preferred to

---

[4] The court takes judicial notice of this federal action.
*Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

[5] This would have been on the third and fourth day of
Finefeuaki's disciplinary sanction.

remain upstairs in protective custody, Shores returned
him to safe watch Cell #2.  Finefeuiaki alleged that
Cell #2 was cold and overcrowded (with three inmates
instead of two), the sink was inoperative, and his
bedding was removed for twelve hours per day.[6]  *Id.*

District Judge Derrick K. Watson found that
Finefeuiaki stated colorable failure-to-protect claims
against MCCC officials, including Sgt. Shores, based on
the alleged assaults on March 29 and 30, 2018.  *See
id.*, Order Dismissing Complaint in Part With Leave to
Amend, ECF No. 6, PageID #40-43.  These claims are
pending.

Judge Watson found that Finefeuiaki failed to state
sufficient facts to show that Defendants Captain
Mulleitner, COS Taylor, or Sgt. Shores violated his
constitutional rights by housing him in Cell #2 for
five days.  Judge Watson granted Finefeuiaki leave to
amend to provide additional facts to support this
claim.  *Id.*, PageID #43.  When Finefeuiaki failed to

---

[6] Finefeuiaki also alleged that he was denied family visits
while in Cell #2, his mail was withheld until 8:00 p.m., and his
bible and religious handbook were misplaced.

provide any additional facts in support of these claims in his amended pleading, Judge Watson dismissed these claims against Captain Mulleitner, COS Taylor, and Sgt. Shores. *See id.*, Order Dismissing First Amended Complaint in Part and Directing Service, ECF No. 10, PageID #72. Finefeuiaki did not amend again, nor does he explain why he raises these claims, albeit with less detail, in a new action.

### III.  DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183

(9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

A plaintiff must also allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A. Immunities and Injunctive Relief

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413

10

(2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

First, Finefeuiaki does not assert an ongoing violation of state law; the events at issue allegedly occurred between April 5 and 9, 2018. He therefore fails to state a claim for damages against Defendants named in their official capacities.

Second, "[f]ederal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871 . . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of *any* confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (emphasis

added). "[H]abeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (citing e.g., *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). A plaintiff may not seek both types of relief in a single action. *See Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994); *cf.* Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.

Finefeuiaki cannot state a claim for injunctive relief for release from state custody in this civil rights action; these claims must be brought in a petition for writ of habeas corpus. Further, these claims are barred by the doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 45-46 (1971), which requires a federal court to abstain when: (1) state judicial proceedings are ongoing, (2) the state proceedings implicate important state interests, (3) the plaintiff is not barred from litigating federal constitutional issues in the state proceeding, and (4) the federal

court action would enjoin or have the practical effect of enjoining the criminal proceeding. *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).

Finefeuiaki's state criminal proceedings are ongoing, they implicate obvious and important state interests in protecting the public by enforcing its criminal laws, and he is represented by counsel who can raise any constitutional issues therein. If this court granted the injunctive relief that Finefeuiaki seeks it would impermissibly enjoin his criminal proceedings.

Accordingly, Finefeuiaki's claims against Defendants Mulleitner, Taylor, Shores, and Hirano in their official capacities for damages, and his requests for injunctive relief, whether for outright dismissal or release pending his state criminal charges' disposition, are DISMISSED with prejudice.

## B.    42 U.S.C. § 1997e(e)

Finefeuiaki alleges that Defendants' actions caused him to feel stress, mental anguish, loss of trust in prison officials, loss of self-confidence, sadness,

anger, unwanted, uncomfortable, disgusted, depressed, and generally traumatized. *See* Compl., ECF No. 1, PageID #7-14. He alleges that he had a difficult time sleeping, felt cold and dehydrated, and his back ached when his brace and bedding were taken during the day.

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury incurred "need not be significant but must be more than de minimis." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (finding back and leg pain and canker sore de minimis); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1223-24 (9th Cir. 2008) (finding bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not de minimis).

The physical injury requirement applies only to claims for mental or emotional injuries and does not

bar claims for compensatory, nominal, or punitive damages arising from a constitutional violation that is not based on alleged mental or emotional injuries (such as due process, equal protection and First Amendment claims). *Oliver*, 289 F.3d at 630.

The Complaint, as written, does not allege more than de minimis physical injury and Finefeuiaki is notified that he is not entitled to monetary damages for emotional distress based on his allegations of deliberate indifference to his health and safety.

## C. Fourteenth Amendment

When a pretrial detainee, like Finefeuiaki, challenges the conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 and n.16 (1979). To the extent Finefeuiaki challenges the conditions of his confinement under the Fourth or Eighth Amendment, those claims are DISMISSED. *See* Compl., ECF No. 1, PageID #7, #9 (Counts I, III).

The elements of a pretrial detainee's conditions of confinement claims are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and
>
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (discussing pretrial detainees' medical care claims) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 831 (2017)) (discussing pretrial detainees' failure-to-protect claims).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071

(quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (discussing pretrial detainees' excessive force claims). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quotation omitted). A plaintiff must "prove more than negligence but less than subjective intent — something akin to reckless disregard." *Id.*

### 1. *Conditions of Confinement*

To the extent Finefeuiaki alleges overcrowding in Cell #2 violated his rights, he fails to state a claim. Temporarily housing an inmate in a cell with more inmates than the cell was intended to hold, by itself, does not rise to the level of a constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981) (holding double-celling by itself does not violate the Eighth Amendment). There is no "one man, one cell principle lurking in the Due Process Clause." *Bell*, 441 U.S. at 542 (quotation marks omitted). Overcrowding has "no constitutional significance

standing alone." *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 471 (9th Cir. 1989).

To state a colorable overcrowding claim, an inmate must plausibly allege that the crowding caused an increase in violence, reduced the provision of other constitutionally required services, or reached a level that rendered the institution unfit for human habitation. *See id.; Hoptowit v. Ray*, 682 F.2d 1237, 1248-49 (9th Cir. 1982) (noting that overcrowding by itself does not violate the Constitution, but can lead to specific effects that might do so), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

First, although Finefeuiaki alleges that Captain Mulleitner refused him "safe custody away from inmate assaults" by housing him in Cell #2 with two known troublemakers, he does not allege that Shores, who actually moved him to the cell, or Mulleitner, who later approved the transfer, had any reason to believe these inmates posed a particular threat to Finefeuiaki. Nor does he allege that he was subjected to any

violence, or even threat of violence, from these inmates or his transfer to Cell #2. That is, Finefeuiaki fails to show that Shores, Mulleitner, or any Defendant, made an intentional decision to house him with inmates that posed an objective and substantial risk of serious harm to Finefeuiaki, failed to take reasonable steps to abate such an obvious, high degree of risk, and by failing to take such measures, caused him any injury.[7] *See Castro*, 833 F.3d at 1071 (discussing failure-to-protect claims by pretrial detainees).

This is particularly true in light of Sgt. Shores immediate, protective response to Finefeuiaki's fear of being moved to Module Delta, when Shores moved him back upstairs to the segregated housing module. The facts show that Cell #2 was another "safe watch" cell, suggesting that Shores chose it for Finefeuiaki's safety because it had the same heightened security measures as Finefeuiaki's original cell.

---

[7] Finefeuiaki has not alleged any injury based on his housing in Cell #2, despite three opportunities to do so.

Second, Finefeuiaki does not show that the conditions in Cell #2 were otherwise unsafe or unfit for habitation. Although his bedding was removed from 8:00 a.m. to 8:00 p.m., he was not denied bedding at night to sleep. Accepting that they were not given cleaning supplies to clean the cell for five days, Finefeuiaki does not allege facts showing that Cell #2 was unfit for human habitation. The cell had bunks for sitting and sleeping and a working toilet. Even though the sink was broken, Finefeuiaki does not allege that drinking water was unavailable upon request, during meals, or when he left the cell for exercise, or that he was denied a shower while in Cell #2.

Third, Finefeuiaki's bare allegation that Cell #2 was extremely cold is insufficient to state a claim. He does not allege that he was denied clothing when his bedding was taken, or was unable to obtain additional clothing, such as socks or long sleeved shirts, upon request. Overly cold air conditioning can be uncomfortable, but Finefeuiaki fails to show that being in an air conditioned cell for five days in April, in

Maui, constitutes an objectively substantial risk of serious harm, of which Defendants should have been objectively aware, and that they failed to take measures to abate this high degree of harm, causing him injury.[8]

Finally, Finefeuiaki's complaint that he was required to wear ankle and wrist restraints for one hour daily while out of the cell for exercise fails to state a claim. "[P]rison authorities may place a dangerous inmate in shackles and handcuffs when they move him from his cell" when necessary "for the protection of staff and other inmates." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Finefeuiaki states that he was sanctioned to disciplinary lockdown for thirty days for an unidentified misconduct. This seemingly justifies the need for restraining him when he was out of his cell. Nothing in the Complaint suggests that Defendants were objectively aware that

---

[8] Temperatures in Maui from April 5 to 9, 2018, between 8:00 a.m. and 8:00 p.m., ranged between a low of 73 and a high of 84 degrees, with the average temperature 76.2 degrees. https://www.timeanddate.com/weather/@5850862 (Maui, April 2018).

the restraints posed a substantial, serious risk to his health, took no measures to abate that risk, and thereby causing him pain or injury.

### 2. Confiscation of Finefeuiaki's Back Brace

Finefeuiaki says that Defendants confiscated a back brace that he used for his "fracture[d] spine" when they took his bedding each morning. Compl., ECF No. 1, PageID #12. He provides no further context to this claim. Finefeuiaki does not allege that Defendants knew of his back injury, either from his medical records or directly from him, or that his injury was otherwise obvious as was his need for the brace. He does not say that Defendants denied him a medical appointment to request medical approval for the brace and have it returned to him. He does not even allege that he told Defendants that he needed the brace at all times to relieve his pain. Finefeuiaki fails to show that Defendants were objectively aware that taking the brace constituted a significant and obvious risk of serious harm to his health, took no steps to abate this serious, objectively high level risk, causing him

unnecessary pain or injury.  To the extent that
Finefeuiaki alleges the confiscation of his back brace
denied him adequate medical care, that claim is
DISMISSED without prejudice.

## D.  Procedural Due Process/Double Jeopardy

Finefeuiaki alleges that he was moved to Cell #2
without due process, constituting double punishment
("Double Jeopardy") for his original misconduct.
Compl., ECF No. 1, PageID #12 (Count IX).  The Due
Process Clause of the Fourteenth Amendment protects
individuals against governmental deprivations of life,
liberty or property without due process of law.  Prison
officials cannot impose punishment for violation of
jail rules and regulations on a pretrial detainee
without complying with the procedural requirements of
*Wolff v. McDonnell*, 418 U.S. 539 (1974).[9]  *See Mitchell*

---

[9] *Wolff* requires written notice, time to prepare for the
hearing, a written statement of decision, witnesses and
documentary evidence when not unduly hazardous, and aid if the
accused inmate is illiterate or the issues are complex.  *Wolff*,
418 U.S. at 564-67.  There also must be some evidence to support
the disciplinary decision, *Superintendent v. Hill*, 472 U.S. 445,
454 (1985), and some indicia of reliability, *Cato v. Rushen*, 824
F.2d 703, 704-05 (9th Cir. 1987).

*v. Dupnik*, 75 F.3d 517, 523–26 (9th Cir. 1996).  If the alleged deprivation amounts to punishment, therefore implicating the Due Process Clause, a court must determine what process is due.  *Bell*, 441 U.S. at 537–38.

It does not appear that Finefeuiaki was transferred to Cell #2 as additional punishment for the disciplinary sanction that he received for his misconduct.  He says that he was sanctioned to disciplinary segregation for thirty days, between March 28 and April 27, 2018.[10]  He does not explain why he was being moved to another module on or about April 5, in the middle of that sanction, but unequivocally says that, when he expressed fear regarding this transfer, he was returned to the disciplinary module and housed in Cell #2 until April 9.  He does not state where he moved then, or whether he remained in disciplinary segregation until April 27, 2018.  As discussed above, although Cell #2 may have been within the disciplinary

---

[10] This suggests that Finefeuiaki had some procedural due process before he was moved to disciplinary segregation in the first instance.

housing module, Finefeuiaki alleges no facts suggesting that transfer to Cell #2 was additional punishment, or that its conditions were *more* punitive than those in his original disciplinary cell.

To be clear, Finefeuiaki does not challenge his original disciplinary sanction here, nor did he in No. 1:18-cv-00249 DKW. He challenges his transfer to Cell #2, because he was not moved to a different cell in the safe watch module, as he wanted. While it is unclear *why* Finefeuiaki was being moved from his original disciplinary cell before his thirty-day sanction concluded, it *is* clear that he was returned upstairs to a different safe watch cell at his request and for his protection. From the facts alleged, the Court cannot determine whether Finefeuiaki's original disciplinary sanction was suspended or continued when he was placed in Cell #2, and cannot infer that he was subject to additional punishment.

Finefeuiaki does not allege sufficient facts to show that he was impermissibly punished twice without due process. Even accepting that transfer to Cell #2

was punitive, Finefeuiaki does not explain what process he was denied. Finefeuiaki fails to state a claim for the denial of due process or the imposition of double jeopardy and these claims are DISMISSED with leave granted to amend.

## E. Equal Protection

Finefeuiaki alleges that Defendants denied him equal protection of the law by moving him to Cell #2. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030-31 (9th Cir. 2013), quoting *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). This does not mean, however, that all prisoners must receive identical treatment and resources. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

To prevail on an Equal Protection claim brought under § 1983, a plaintiff must show that he was intentionally discriminated against due to his membership in a protected class, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005), or

that similarly situated individuals were intentionally treated differently for no rational basis. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004). The first step in determining whether prison officials violated an inmate's right to equal protection is to identify the relevant class to which he belonged. *See Thornton*, 425 F.3d at 1166. "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* at 1167.

Finefeuiaki does not allege that his transfer to Cell #2 was discriminatory because he is a member of a protected class, or that he was treated differently than other similarly situated inmates by his transfer to Cell #2. This claim is DISMISSED with leave to amend.

## F. Claims Against Warden Hirano

Finefeuiaki complains that Warden Hirano violated his rights by "not coming down the module and see[ing] if every inmates['] needs are taking care off. And not

27

making shure [sic] that all staff are doing what they suppose to do." Compl., ECF No. 1, PageID #4. He complains that Warden Hirano did not personally respond to his messages, although he states that Hirano sent Lieutenant Mollena to speak with him.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is liable for the constitutional violations of subordinates only if the supervisor participated in or directed the violations. *See id.* That is, a supervisor is not liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct, because government officials can only be held liable under § 1983 for their own conduct, not the conduct of others. *See Iqbal*, 556 U.S. at 676.

Supervisors may, however, be liable even when they did not overtly participate in the offensive act, if they implement a policy so deficient that the policy

itself is a repudiation of constitutional rights and the moving force behind a constitutional violation. *See Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

The causal connection between a supervisory defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague, conclusory allegations against supervisory personnel in civil rights violations are insufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 662 U.S. at 676.

Finefeuiaki alleges Hirano is liable for his claims by virtue of his position as MCCC Warden, because he failed to ensure that inmates at MCCC were safe and to prohibit the other Defendants' alleged violations. Finefeuiaki alleges no conduct that connects Warden

Hirano to his allegations that Defendants Mulleitner, Taylor, or Shores impermissibly transferred him to Cell #2 and thus, violated his constitutional rights. Nor does he allege that Warden Hirano implemented a policy that was the moving force behind the constitutional violations he alleges. Claims against Warden Hirano are DISMISSED with leave to amend.

### IV.   LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend those claims dismissed herein without prejudice. Finefeuiaki may file an amended complaint on or before April 30, 2019, that cures the deficiencies in his claims. Finefeuiaki may not expand his claims beyond those already alleged or add new claims, without an explanation regarding how those new claims relate to the claims alleged in the original Complaint.

Finefeuiaki must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires an amended complaint to be complete in itself without reference to any prior pleading. An amended complaint must be short

and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012). If Finefeuiaki fails to timely file an amended complaint that cures the deficiencies in his claims, this action may be dismissed and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).[11]

## V.  CONCLUSION

(1)  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) &

---

[11]28 U.S.C. § 1915 (g) states:

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

1915A(b)(1). Finefeuiaki's claims for injunctive relief, and claims for damages against Defendants in their official capacities, are DISMISSED with prejudice. All other claims are DISMISSED with leave granted to amend.

(2) Finefeuiaki may file an amended pleading that cures the deficiencies in his claims, as limited herein, on or before April 30, 2019.

(3) The Clerk is directed to send Finefeuiaki a blank prisoner civil rights complaint form so that he can comply with this Order if he elects to amend his Complaint.

(4) If Finefeuiaki fails to timely amend his pleadings and cure the deficiencies in his claims, this suit may be AUTOMATICALLY DISMISSED without further notice and he may incur a strike under 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Helen Gillmor
United States District Judge

DATED: February 25, 2019, Honolulu, Hawaii.